(February 18, 1909.)

## BOISE CITY NATIONAL BANK, Appellant, v. BOISE CITY, Respondent.

[100 Pac. 93.]

ORGANIZATION OF MUNICIPAL CORPORATIONS—UNDER GENERAL LAWS—UNDER SPECIAL CHARTERS—AMENDMENT OF—BY SPECIAL LAW—BY GENERAL LAW—CONSTRUCTION OF SEWERS—PAYMENT OF—ISSUANCE OF BONDS—TAXATION—SPECIAL ASSESSMENTS—PAYMENT OF BY INSTALLMENT.

1. Under the provisions of sec. 2, art. XXI, of the Idaho Constitution, the special charters under which certain cities in the state had been incorporated were continued in force.

2. Under the provisions of sec. 1, art. XII, of the Constitution, the legislature is empowered to enact general laws for the incorporation and classification of cities and towns, and it is also provided in said section that cities and towns theretofore incorporated under special charters may become organized under such general laws whenever a majority of the electors at a general election shall so

determine, under such provisions of law as may be enacted by the legislature.

3. The special charter of Boise City, as amended and re-enacted in 1907, contains all of the powers that that city has in regard to the construction of sewers and the method of levying assessments and collecting taxes for the payment of such sewers.

4. The powers of Boise City in regard to creating an indebtedness and paying the same and the method and manner of doing so, must be determined by the provisions of its charter.

5. An act providing for the issuance of bonds for improvement of streets and laying of sewers in incorporated cities, towns and villages, and for the payment of the cost of such improvement, etc., approved February 24, 1905 (Sess. Laws 1905, p. 297), is a general law applicable to cities, towns and villages that have been incorporated under the general law of the state, and is not applicable to cities incorporated under special charter.

6. The special charters of the cities of this state cannot be amended by general laws.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Fremont Wood, Judge.

Action to determine the validity of certain bonds issued in payment for the construction of sewers.   Judgment for the defendant.   *Reversed.*

Johnson & Johnson, and L. F. Clinton, for Appellant.

In the absence of legislative provision for collection of assessments in installments, a city may not prescribe that an assessment be divided into installments. (*Farrell* v. *West Chicago,* 162 Ill. 280, 44 N. E. 527; *Culver* v. *People,* 161 Ill. 89, 43 N. E. 812.)   Method of exercising power to levy and to collect assessments as provided by the statute is the measure of city's power to make it. (*City of Bluffton v. Miller,* 33 Ind. App. 521, 70 N. E. 989.)   Where a power is conferred upon a municipal corporation and the manner in which it is to be exercised is prescribed, such mode must be pursued. (*Carson v. Martin,* 2 Dutch. (N. J.) 594, 69 Am. Dec. 584; *Zottman v. San Francisco,* 20 Cal. 96, 81 Am. Dec. 96; *Smith v. City of Newburgh,* 77 N. Y. 130; *State v. Newark,* 25 N. J. L. 399; *Hundley v. Lincoln Park Com.,* 67 Ill. 559.)

Where there is a special statute relating to a particular subject, this will control even as against a general law of later date. (*Lawyer v. Carpenter* (Ark.), 97 S. W. 662, 663, 664, and cases cited.)

Cities operating under special charters can only avail themselves of the general incorporation laws by a majority vote of the electors when the legislature provides the specific method, which has not yet been done. (*Wiggin v. City of Lewiston,* 8 Ida. 527, 69 Pac. 286; *Butler v. City of Lewiston,* 11 Ida. 393, 83 Pac. 234; *Desmond v. Dunn,* 55 Cal. 242; *Wood v. Election Commrs.,* 58 Cal. 568; *Straude v. Elec. Commrs.,* 61 Cal. 313; *In re Guerrero,* 69 Cal. 88, 10 Pac. 261; *Thomason v. Ashworth,* 73 Cal. 73, 14 Pac. 615; *Fritz v. San Francisco,* 132 Cal. 373, 64 Pac. 566; *McHugh v. City and County of San Francisco,* 132 Cal. 381, 64 Pac. 570; *Wichman v. City of Placerville,* 147 Cal. 162, 81 Pac. 537.)

The proposition of permitting the legislature to amend or affect special charters in matters of local government, by general laws, is contrary both to the letter and to the spirit of the constitution. (*City of Lexington v. Thompson,* 113 Ky. 540, 101 Am. St. Rep. 361, 68 S. W. 477, 57 L. R. A. 775; *People ex rel. Le Roy v. Hurlburt,* 24 Mich. 44, 9 Am. Rep. 103; *People ex rel. Park Commissioners v. Detroit,* 28 Mich. 228, 15 Am. Rep. 202; *State ex rel. Saunders v. Kohnke,* 109 La. 838, 33 South. 793; *State ex rel. Atty. General v. Moores,* 55 Neb. 480, 76 N. W. 175, 41 L. R. A. 624.) Regarding the insufficiency of the title to the act of 1905, if it were intended to make it apply to cities operating under special charters, we call attention to the language of Mr. Justice Sharpstein, in delivering the opinion in *Wood v. Board of Election Commrs.,* 58 Cal. 565. See, also, *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962; *Katz v. Herrick,* 12 Ida. 21, 86 Pac. 873.

Chas. M. Kahn, for Respondent.

"Where a law is substantially re-enacted, it is said to show that the legislature did not regard it as repugnant to an intermediate act to the same effect covering the same subject." (Lewis' Sutherland Stat. Construction, sec. 273, p. 525; *Horn v. State,* 114 Ga. 509, 40 S. E. 768.)

"A general law will be repealed *pro tanto* by a subsequent special act when the two acts cannot stand together, but if on a reasonable construction the two acts are not inconsistent and may stand together, the general act is not repealed by the later specific act." (26 Am. & Eng. Ency. of Law, 2d ed., p. 743; *Hutchinson v. Self,* 153 Ill. 542, 39 N. E. 27; *State v. Witter,* 107 N. C. 792, 12 S. E. 328; *State v. Snow,* 117 N. C. 778, 23 S. E. 323; *People v. Wenzel,* 105 Mich. 70, 62 N. W. 1038; *Board of Commrs. of Barber County v. Savings Soc.,* 101 Fed. 767, 41 C. C. A. 667; *Reusch v. City of Lincoln* (Neb.), 112 N. W. 377; *Ex parte Wilber* (Neb.), 112 N. W. 379; *Ladd v. Gambell,* 35 Or. 393, 59 Pac. 113. See, also, *Stratton v. Oregon City,* 35 Or. 409, 60 Pac. 906.)

These last two cases are of a special importance, for the reason that the conditions under them and the case at bar are identical, and more so when the fact is known that the bonding act of 1905 was taken as a copy of the Bancroft bonding act of Oregon construed in the two above cases. (See, also, *Long v. City of Portland* (Or.), 98 Pac. 149; *Ewing v. Hoblitzelle,* 85 Mo. 64; *Kenefick v. St. Louis,* 127 Mo. 1, 29 S. W. 838.) Section 16, article 3, of the constitution, in regard to title, must be given a reasonable construction. (*State v. Doherty,* 3 Ida. 384, 29 Pac. 855; *Andrews v. Commissioners,* 7 Ida. 453, 63 Pac. 592; *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. Rep. 201, 68 Pac. 295; *Boise Irr. Co. v. Stewart,* 10 Ida. 38, 77 Pac. 25; *State v. Dolan,* 13 Ida. 693, 92 Pac. 995, 14 L. R. A., N. S., 1259; *Vineyard v. Grangeville* (Ida.), 98 Pac. 422.)

Counsel for appellant contend that because it does not say in the title of the act of 1905 that it shall apply to special chartered cities it is invalid. The title says it shall apply to *all* incorporated cities, towns, and villages; this certainly comprehends cities operating under special charters as it takes in all cities, towns, and villages in the state.

SULLIVAN, C. J.—This action was commenced by the appellant, the Boise City National Bank, to test the validity of a proposed issue by the respondent city, of lateral sewer improvement bonds of Sewer Districts Nos. 104, 105, and 106,

amounting to $50,000. The respondent city now is, and for a long time prior to the adoption of the state constitution was, operating under a special charter, which has been amended several times by special acts of the legislature. The special charter of Boise City was originally passed and approved January 11, 1866, and was amended by act of March 11, 1903, and again on February 22, 1907, the charter of Boise City was re-enacted and amended, and what is known as the charter of 1907 went into force and effect. While operating under the charter of 1907, the city authorized the issuance of local improvement bonds for the lateral sewer districts above mentioned, for the sum of $50,000, and advertised for bids therefor, and the bid of the appellant for said bonds was accepted, the appellant accompanying said bid with a certified check for $2,500 as an evidence of good faith. After the bid of appellant had been accepted, the appellant bank refused to accept the bonds, contending that the same were invalid and requested the return of the check. The city refused to return the check, and the present action is the outcome of that controversy, to recover judgment against the city for the return of said certified check.

The respondent city answered, setting forth all of the facts in regard to said transaction. Thereupon counsel for the city made a motion for judgment on the pleadings on the ground and for the reason that from the complaint and answer it appeared that the respondent city was authorized by the act of the legislature to issue said bonds, which motion was granted and judgment accordingly entered. This appeal is from the judgment.

On February 24, 1905 (Sess. Laws 1905, p. 297), the legislature passed an act entitled: "An act to provide for the issuance of bonds for improvement of streets and laying of sewers in incorporated cities, towns and villages, and for the payment of the cost of such improvement and laying of sewers by installments, and making the provisions hereof applicable to cities, towns and villages which have levied special assessments for improvements or for laying sewers." Said bonds were issued, or were to be issued, under the provisions of said act, That act being a general law, it is contended by counsel for

appellant, does not apply to Boise City, and that the Boise City authorities have no power to issue bonds under the provisions of said act. It is contended that the amendment to the Boise City charter of February 22, 1907, under which the city is operating, was passed since said general act of February 24, 1905, and provides a complete system for building sewers; assessing the property benefited, and collecting from the property owners the cost thereof, and provides also that this method of collection shall be exclusive; while it is contended by respondent that the said bonding act of 1905 was intended as an aid to cities operating under special charters, in making improvements and to relieve the hardship of the taxpayers in paying such assessments at one time, for the reason that sec. 10 of said act expressly provides that nothing in that act shall be construed as repealing or modifying any existing laws prescribing the method by the means of which cities, towns and villages having more than one thousand inhabitants, whether organized under special charters, local laws or general incorporating acts, may make improvements and lay sewers, and that such act shall be construed as additional and confirmed authority.

The real question presented for decision is whether the provisions of the Boise City charter of 1907 in regard to constructing sewers and assessing the property benefited and collecting from the property owners the cost thereof is the law by which those matters must be done, or whether that charter is supplemented by the act of 1905, and the provisions of that act must be construed as additional authority conferred on Boise City. There is no express repeal of the provisions of the act of 1905 in said 1907 charter, and the main question presented is, Should the act of 1905 be construed as additional authority to the city in the issuance of sewer bonds, or must the action of the city in that regard be controlled by its charter provisions?

We have in this state cities which were organized under and granted certain powers, by special charters, enacted by the legislature prior to the adoption of our state constitution. Sec. 2, art. XXI of our state constitution, continued such special charters in force after the constitution went into effect.

We have other cities that have been organized under the general municipal corporation law of the state. Section 1, art. XII of the constitution provides, among other things, that the legislature shall enact general laws for the incorporation and classification of cities and towns, and that cities and towns theretofore incorporated under special charters may become organized under such general laws whenever a majority of the electors at a general election shall so determine under such provisions of law as may be enacted by the legislature. Boise City has never become organized under the general laws of the state, but has continued to exist and do business under the powers granted it by its special charter.

It is contended by counsel for appellant that the city charter, as amended and re-enacted in 1907, contains all of the powers that the city has in regard to the construction of sewers and the method of levying assessments and collecting taxes for the payment of such sewers; while it is contended by counsel for respondent that the city charter is not as full and complete as it ought to be in regard to the making of improvements and laying of sewers, and that the bonding act of 1905 supplements the charter, and must be construed as additional authority for levying assessments and the collection of the same, and for the payment of the same in installments and issuing bonds therefor. Section 48 of the charter provides the manner in which all special assessments for certain purposes must be made, and provides that whenever any special assessment is levied, it shall be the duty of the clerk to prepare a special assessment-roll and to collect said assessments. Under the general law of 1905 it is provided that such assessments may be paid in ten annual installments and that bonds may be issued therefor. The city proposes to issue the bonds involved in this suit under said general law.

Counsel for the city also contends that said general law of 1905 is made for the benefit of all cities operating under a special charter, as well as those organized and operating under the general law. We cannot agree with that contention. It is true the legislature attempted by sec. 10 to make said general law applicable to cities organized under a special charter, but that could not be done, for the reason that special charters

cannot be amended by general laws. The special charter of Boise City prescribes the method, manner and means of constructing improvements, such as sewers, and provides how the assessments therefor must be made and the tax collected for the payment of the same. That being true, the method there prescribed must be followed, and the method there provided cannot be superseded by the general law.

Under the provisions of sec. 1, art. XII of the constitution, it is provided that cities and towns theretofore incorporated may become organized under the general laws whenever the majority of the electors at a general election shall so determine, under such provisions therefor as may be made by the legislature. This clearly indicates that cities incorporated by special charter do not come under the general laws of the state until the majority of the electors of such city at a general election for that purpose shall so determine. We think it clear that the powers of Boise City in regard to creating indebtedness and paying the same must be determined by the provisions of its charter, and not by the provisions of said bonding act of 1905, which is a general law applicable to all cities incorporated under the general law for incorporating towns and cities.

It is contended by counsel for the city that the bonding act of 1905 is not inconsistent with the new charter of 1907, but merely goes further and gives additional powers, which, it is contended, are a benefit to the people. This court cannot consider whether the provisions of said bonding act would be a benefit to the people of Boise City or not. We are called upon to determine the authority of the council of Boise City to issue such bonds in the mode and manner proposed. In 1907, two years after the bonding act of 1905 had been enacted, the legislature amended and re-enacted the Boise City charter, and if it had intended that the city should have the power granted by the act of 1905, it should have incorporated such power into the Boise City charter, as was done in the act amending the City of Lewiston special charter passed at the same session of the legislature. (See Laws 1907, p. 429, secs. 180, 182.)

It is also contended by counsel for the city that the provisions of the city charter are not complete on the subject of assessments for sewers, and that the statute of 1905 is needed to supplement them. It is true that the Boise City charter does not provide for the payment of sewer assessments in installments, nor provide for the issuance of bonds, but if that were desirable for Boise City, the legislature should have amended the charter, as the special charter cannot be amended by a general law such as the act of 1905. The charter provisions are sufficiently complete so that sewers in said districts were long since completed, and a great many of the property owners have paid their share of the costs of constructing them, and the matter is closed so far as they are concerned. It appears that the special charter of 1907, for the government of Boise City only, is complete in itself, and under it all of the sewers in said districts were constructed. Section 48 of said charter provides the manner in which all special assessments for constructing sewers and for other purposes shall be made, but it fails to provide, as does the act of 1905, for the payment of the cost of construction in ten consecutive years and for the issuance of bonds therefor, and it is well settled that where a later statute provides a complete method by which a city may provide for the construction of a public improvement, and also provides the manner of levying and collecting the assessment to pay for the improvement, the later law will operate as a substitute for the earlier act, and if anything in the earlier act is omitted, the legislature will be presumed to have intentionally omitted it. The same legislature and during the same session that it incorporated into the city of Lewiston charter the provisions of the law of 1905 in regard to the manner of paying for sewer improvements, also amended the Boise City charter and left out of the Boise City charter the provisions of the general law of 1905, and it cannot be presumed that it unintentionally omitted those provisions. The charter and the ordinances passed in pursuance of it, provided for the collection of the assessments by the clerk, do not provide for the division of the assessments into ten annual installments and the issue of bonds as is provided by the act of 1905. It clearly appears that the law of 1905

is inconsistent with the last amendment of the special charter of Boise City, as it contains matter not contained in the special charter. In the last amendment to the Boise City charter, made in 1907, the legislature re-enacted the former charter with some amendments, omitting, however, to include any of the provisions of the general law of 1905, and if the intention was to make it a part of the new charter, it should have been included. We think that the omission was intentional. That being true, the provisions of the general law of 1905 should not apply to the new charter. The principle of law involved is the same as when a statute is revised or amended, and some part of it omitted. The part of it left out is superseded and repealed, and when one act is framed for another, some parts being omitted, the parts omitted are not to be revived by construction, but must be considered as annulled. (*Ellis v. Paige*, 1 Pick. (Mass.) 43; *Buck v. Spofford*, 31 Me. 34; *Combined Saw & Planer Co. v. Flournoy*, 88 Va. 1029, 14 S. E. 976.)

Where there is a special statute relating to a particular subject, the special statute will control even as against a general statute of a later date. (*Lawyer v. Carpenter* (Ark.), 97 S. W. 662.) We do not think the question of the repeal by implication of the general law of 1905 by the new charter of 1907 arises in this case, as the provisions of the special charter were purposely framed to cover cases like the one at bar, while the general act of 1905 applies to cities and towns organized under the general law and not to those under special charters. The state constitution contemplates that special charters shall be amended by special acts only, and the general laws relating to the local government of the city cannot be made to apply to Boise City without the consent of a majority of the electors. This court had under consideration said provisions of the constitution in the case of *Wiggin v. City of Lewiston*, 8 Ida. 527, 69 Pac. 286; and *Butler v. City of Lewiston*, 11 Ida. 393, 83 Pac. 234. The former case was brought to test the validity of certain bonds of the city of Lewiston, and the court gave effect to the provisions of the special charter of the city of Lewiston, and not to those of the general law. The latter case involved the legality of a bond

issue.   The court held that sec. 2, art. XXI of the constitution continued the special charter of Lewiston in force, and that the power of the legislature to amend said special charter by special act was left unimpaired, and that cities operating under special charters can only avail themselves of the general incorporation laws by a majority vote of the electors, when the legislature provides the specific method required by the constitution to be provided, which had not at that time been done.

Sec. 6, art. XI of the constitution of California is the same as .sec. 1, art. XII of our state constitution, except that for many years it contained the following clause at the end of the section: "and cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws." In *Desmond v. Dunn*, 55 Cal. 242, decided while said quoted clause of the constitution was in force, the court said:

.   "To us the general intention to emancipate municipalities as far as it consistently could be done, from the control of the legislature, is apparent; and we cannot hold that general laws for the government of such municipalities can take effect in any of them, until a majority of the electors so determine, without violating not only the spirit, but likewise the plain letter of the constitution.   The intention being clear, it is our duty to give effect to it."

As shedding some light upon this question, see, also, the concurring opinion of Mr. Justice Ross in *Wood v. Election Commrs.*, 58 Cal. 565; *Staude v. Election Commrs.*, 61 Cal. 313; *In re Guerrero*, 69 Cal. 88, 10 Pac. 261; *Thomason v. Ashworth*, 73 Cal. 73, 14 Pac. 615.

The evil effect of the last clause of sec. 6, art. XI, of the constitution of California, in permitting general laws relating to purely municipal affairs of local concern, to be made applicable by the legislature to cities operating under special charters without their consent, was necessarily very great. This is precisely what defendant's contention would lead to in this case, under the same constitutional provisions, except that the provision of our constitution does not contain the

last clause of said sec. 6, art. XI, of the California constitution. At the general election held November 3, 1906, in California, the last clause of said section was amended to read as follows: "and cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, except in municipal affairs, shall be subject to and controlled by general laws." This amendment leaves the constitutional provisions of California relating to municipal charters substantially the same as that of Idaho, and under it the supreme court of that state has ever since held that in matters of local government of "municipal affairs," no general law can be made to apply. (*Fritz v. San Francisco*, 132 Cal. 373, 64 Pac. 566; *McHugh v. San Francisco*, 132 Cal. 381, 64 Pac. 570.) In *Wichmann v. City of Placerville*, 147 Cal. 162, 81 Pac. 537, it was held that the proper rule of construction was that the charter was the measure of the powers of the municipality. In the case at bar, it is clear that the construction of sewers and the levying of assessments for the payment therefor, are matters of local concern in which the local community is alone interested, and in which the state at large has no special interest.

If the legislature has the power under the constitution of Idaho to make the general bonding act of 1905 relating to internal governmental affairs of cities and villages apply to Boise City by merely inserting in that act a section to that effect, then the legislature may make the general act governing cities, towns and villages throughout the state, or any part thereof, apply in the same manner without a consent of the majority of the electors as is required by sec. 1, art. XII of the constitution. If the legislature could do that, it would annul said provision of the constitution entirely. To permit the legislature to amend special charters of cities in matters of local government by general laws would be contrary both to the letter and spirit of the constitution. This court held in *McDonald v. Doust*, 11 Ida. 14, 81 Pac. 60, 69 L. R. A. 220, that acts inconsistent with the spirit of the constitution are as much prohibited as are acts specifically enumerated and forbidden therein. (*City of Lexington v. Thompson*, 113 Ky. 540, 101 Am. St. Rep. 361, 68 Pac. 477, 57 L. R. A. 775.)

The special charter of Boise City is recognized and continued in force by the constitution, and a method of amending it by special laws is clearly contemplated by the constitution. All of the limitations upon the legislature in regard to special legislation are found in sec. 19, art. III, of our constitution. (*Butler v. City of Lewiston*, 11 Ida. 393, 83 Pac. 234.) We have no provision in our constitution such as is found in the constitutions of some other states, to the effect that no special laws shall be passed where general laws can be made applicable. It follows, therefore, that these special charters may be amended by special laws to meet the requirements of growing cities, but cannot be amended by general laws.

The act of February 24, 1905, is an example of how general legislation could be made to affect cities under special charters without the attention of the people of the city or even the members of the legislature ever being called to that fact, because no reference to its application to such cities is mentioned in the title of the bill. There is nothing in the title of this act which would indicate that it is proposed to affect or amend the charter of Boise City. The title of the act of February 24, 1905, indicates that it is a general law providing for the issuance of bonds of incorporated cities, towns and villages organized under the general incorporation laws of the state. The title is general, while in sec. 10 of said act it is provided that said act shall be construed as additional and confirmed authority to cities under special charters. That part of said act is void because it is not embraced in the title, and if it were embraced in the title, it could not affect Boise City, as above shown.

We therefore hold, under the various provisions of our constitution above quoted, that the legislature cannot amend the special charter of Boise City by a general law. Such amendment can only be made by special laws.

The judgment is therefore reversed and the cause remanded, with instructions to enter judgment in favor of the appellant as prayed for in the complaint. Costs are awarded to the appellant.

Stewart and Ailshie, JJ., concur.