(No. 6772. May 4, 1940.)

AMERICAN NATIONAL BANK OF IDAHO FALLS, Appellant, v. JOINT INDEPENDENT SCHOOL DISTRICT No. 9, MADISON COUNTY, IDAHO, Respondent.

[102 Pac. (2d) 826.]

Chase A. Clark and John L. Bloem, for Appellant.

Herbert O. Skalet, for Respondent.

AILSHIE, C. J.—This action was brought by the appellant the American National Bank of Idaho Falls against the respondent Joint Independent School District No. 9 of Madison County on thirty-three separate causes of action. Appellant is the assignee of the warrants issued by the district to teachers and other employees and for school equipment furnished during the fiscal year, 1930–1931. The warrants were issued against taxes duly and regularly levied and assessed against the real property within the district. The respective creditors of the district presented the warrants to the treasurer for payment; whereupon the treasurer indorsed them all in the same manner, the first of which is as follows:

"Presented Oct. 17, 1930 Not paid for want of funds. J. W. James, District Treasurer."

A tax had previously been levied and assessed to pay all these warrants. After the indorsement of the warrants, "not paid for want of funds," the bank advanced the money to pay the amount called for by the respective warrants and took assignments and has carried them to the present time.

Among other things, it is alleged in the complaint (first cause of action) as follows:

"VI.

"That prior to the issuance of said Warrants as aforesaid, the same defendant corporation had levied separately in mills the amount of levy necessary to maintain and support the school of said Independent District for the ensuing school year, for which said warrant was afterward drawn; that is, from July 1, 1930 to July 1, 1931, and had complied with the laws of the State of Idaho in such cases made and provided.

"VII.

"That the tax levy so made was sufficient (based upon the assessed valuation of the property of such District for said ensuing year) to maintain and support said Independent

School District and pay said warrant, providing said taxes had been collected and paid over to the Treasurer of said defendant corporation, so that said warrants could have been called and paid.

"VIII.

"That this plaintiff, during said fiscal year, from July 1, 1930 to July 1, 1931, in addition to becoming the legal owner and holder through purchase of the warrant aforesaid, purchased additional warrants of said School District amounting in the aggregate in excess of $5000.00, and the defendant corporation from time to time between the 1st day of July 1931 and the 2nd day of March, 1936, continued to take up and pay said warrants out of the levy as it was paid in on the tax levy so made as aforesaid, and continued to advise the plaintiff that as fast as the money was collected from this levy so made for the fiscal year from July 1, 1930 to July 1, 1931, and funds became available, said warrants would be called and paid, but made no further payments on said warrants after the 2nd day of March, 1936, advising plaintiff after said date that they had no money from said levy with which to pay the same, leaving the warrants as set forth in this cause of action and other causes of action in this complaint, unpaid."

The complaint further alleges the enactment of the moratorium statute, approved February 14, 1933 (1933 Sess. Laws, chap. 41, p. 54) and also the moratorium statute approved March 6, 1935 (being Senate Bill No. 80, 1935 Sess. Laws, chap. 93, p. 175).

It is also alleged that

"the last money paid by said district, collected as aforesaid, was paid on the 2nd day of March, 1936, and the balance of the warrants issued for said year held by the plaintiff were left unpaid, and since the second day of March, 1936, the said defendant corporation had paid nothing from said levy made for said fiscal year of July 1, 1930, to July 1, 1931, but have diverted it to other funds, and there is now not sufficient delinquent taxes remaining unpaid in said district to pay the remaining warrants held by this plaintiff including the one in this case of action set forth."

The other causes of action are alleged substantially the same as the first except as to the names of the payees of warrants, amounts and dates of issuance and indorsement of the warrants. Demurrer to the complaint was sustained on the ground that the several causes of action were barred by sec. 5–216, I. C. A.

It is doubtful if the teacher who received and accepted this warrant, with the indorsement, ''Not paid for want of funds,'' could have thereafter maintained an action on the warrant for judgment against the district until such time as the ''funds'' accruing from that year's tax levy were collected. Such doubt is intensified by the peculiar provisions of the statute relating to the running and operating expenses of these schools and the money provided for payment of the bills. Sec. 32–615, par. 26, I. C. A., provides:

''The trustees of any school district may issue orders for warrants for the payment of teachers for their services in teaching, and for further necessary expenses connected with the school, whether or not there is any money in the treasury to the credit of the district issuing such orders for warrants; provided, that the total amount of such orders for warrants do not exceed ninety-five per cent of the income and revenue for such district for the calendar year until such revenue and income have been paid into the treasury to the credit of the district issuing such order for warrant.''

Sec. 32–813, as amended by the 1933 and 1935 Session Laws, is as follows: (amendments shown by italicized portions).

Sec. 32–813. ''The person holding such warrants issued by the county auditor *of* independent school district may present the same to the county treasurer or independent school district treasurer for payment. If there is not money in the treasury to the credit of the said district on which the warrant is drawn to pay such warrant *in the order of its issuance as required by law* the treasurer shall endorse on the back of said warrant, 'Not paid for want of funds.' Warrants so indorsed by the county treasurer or independent school district treasurer shall *bear* interest at the rate of seven per cent per annum from the date of indorsement until *ten days after said warrant has been called for payment;* provided, *if said warrants shall be at a discount no allow-*

*ance shall be made to cover such discounts in the drawing of said warrants."* (1935 Sess. Laws, chap. 119, p. 282.)

(See *Osage Farmers National Bank v. Van Hook Special School Dist.*, 66 N. D. 196, 263 N. W. 162, 164, 165; *Ostling v. People*, 57 Colo. 22, 140 Pac. 173, considering somewhat similar statutes.)

 Without committing the court on that question, we may safely say that if it be conceded the statute of limitations began to run before the tax was collected, it was unquestionably interrupted and suspended by the Moratorium Act of the legislature of 1933 (1933 Sess. Laws, chap. 41, p. 54), by which the 1930–1931 delinquent taxpayers were given until the second Monday in January, 1935, to pay the tax and redeem their lands from the tax liens. It is unreasonable to assume that the legislature meant to withdraw from the school district the means and remedy for collecting existing assessments and liens for the payment of debts incurring under such liens and assessments, and at the same time allow the statute of limitations to continue to run and bar the debts before the sales of the lands chargeable with the liens could be made. The district had no other means of raising a fund, with which to pay these warrants, than to sell the lands of delinquent taxpayers. When that method was suspended and withdrawn by the legislature, the district was helpless to raise funds with which to pay. In this respect, the district was in a very different condition from that of an individual debtor; he is under no restrictions except the limitations of his credit. It is not to be assumed that the legislature intended to relieve delinquent taxpayers by granting them a moratorium and at the same time subject the school district to a multitude of lawsuits to obtain judgments against it, for the very indebtedness against which the moratorium was granted. We prefer to believe that the legislature acted in good faith and with honorable and fair intentions.

 Respondent places its chief reliance upon the case of *Little v. Emmett Irr. Dist.*, 45 Ida. 485, 263 Pac. 40. That case rests on material facts that distinguish it from the case at bar, among which may be mentioned: No assessment was ever levied to pay the warrants sued upon; *mandamus* was never sought to compel levy of assessment; the statutes under

which that case arose and was prosecuted differ in some essential respects from the statute here involved and particularly in that no moratorium statute was invoked. Furthermore, an irrigation district, while *quasi*-municipal, is a voluntary organization for wholly business purposes (*City of Nampa v. Nampa & Meridian Irr. Dist.*, 19 Ida. 779, 115 Pac. 979; *Nampa & Meridian Irr. Dist. v. City of Nampa*, 238 U. S. 643, 35 Sup. Ct. 602, 59 L. ed. 1502); whereas, the duty of maintaining the public schools is imposed by the Constitution as a primary and fundamental duty of state government; (Sec. 1, art. 9, Const.) and the organization and maintenance of the districts is purely a matter of administrative convenience in the execution of the constitutional mandate.

Judgment reversed and cause remanded to the trial court with instructions to overrule the demurrer. Costs awarded to appellant.

Budge and Holden, JJ., concur.

Givens, J., concurs in conclusion.

Morgan, J., dissents.

Petition for rehearing denied.