The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 13, 2021

## 2021COA68

## No. 19CA2085, People v. Cox — Colorado Constitution —

## Affirmative Defenses — Medical Use of Marijuana

As a matter of first impression, a division of the court of
appeals holds that the elements of the medical marijuana
affirmative defense are prescribed by article XVIII, section 14(2)(a) of
the Colorado Constitution and are not supplemented by additional
elements purportedly added in later-enacted Colorado statutes.

Court of Appeals No. 19CA2085
Mesa County District Court No. 17CR1974
Honorable Brian J. Flynn, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

David Lawrence Cox,

Defendant-Appellee.

RULINGS APPROVED

Division I
Opinion by JUDGE BERGER
Dailey and Tow, JJ., concur

Announced May 13, 2021

Daniel P. Rubinstein, District Attorney, George Alan Holley II, Senior Deputy District Attorney, Grand Junction, Colorado, for Plaintiff-Appellant

Flanders, Elsberg, Herber & Dunn, LLC, Mark A. Herber, Elizabeth A. Raba, Longmont, Colorado, for Defendant-Appellee

¶ 1    This is an appeal by the district attorney under section 16-12-102(1), C.R.S. 2020, after a jury acquitted defendant, David Lawrence Cox, of marijuana offenses.  The district attorney contends that the trial court erroneously (1) instructed the jury regarding the definition of marijuana and (2) refused to supplement the elements of the constitutionally defined affirmative defense of medical marijuana cultivation with three additional elements contained in Colorado statutes.  As a matter of first impression, we hold that the elements of the medical marijuana affirmative defense are prescribed by article XVIII, section 14(2)(a) of the Colorado Constitution and cannot be supplemented by additional elements purportedly added in later-enacted Colorado statutes.  Therefore, we approve the trial court's rulings.

## I.    Jurisdiction

¶ 2    Section 16-12-102(1) authorizes an appeal by the district attorney in a criminal case, but only as to questions of law.  *See People v. Ross*, 2021 CO 9, ¶ 14.  As the authorizing statute makes clear, "[n]othing in this section shall authorize placing the defendant in jeopardy a second time for the same offense."  § 16-12-102(1).  Therefore, all we can do is approve or disapprove the trial

1

court's rulings. *People v. Moore*, 226 P.3d 1076, 1092 (Colo. App. 2009).

## II. Issues on Appeal

¶ 3 The district attorney frames the two issues on appeal as follows: "First, did the trial court err when it incorrectly ruled [section] 18-18-406(3.5) and [section] 18-18-406(3)(b)(I), C.R.S. [2020,] unconstitutional[?] And second, did the trial court err when it incorrectly ruled [section] 18-18-102(18)(a)[, C.R.S. 2020,] unconstitutional?"[1]

¶ 4 The initial difficulty with this appeal is that nowhere in the record on appeal did the trial court declare any of these statutes unconstitutional. In fact, the trial court expressly stated that it was *not* declaring any of these statutes unconstitutional. At one point,

---

[1] Because the district attorney claims that the trial court invalidated two, or maybe three, statutes, we raised on our own motion whether we have appellate jurisdiction. We do not have appellate jurisdiction when a trial court declares a Colorado statute unconstitutional. § 13-4-102(1)(b), C.R.S. 2020; *see Lobato v. State*, 2013 CO 30, ¶ 10. Accordingly, we transferred this case to the Colorado Supreme Court. That court declined to accept jurisdiction, so the case is back before us. Under these circumstances, when the supreme court declines jurisdiction, that is a conclusive determination that this court has appellate jurisdiction. *Barela v. Beye*, 916 P.2d 668, 673 (Colo. App. 1996).

after framing the issues, the district attorney appears to concede that the trial court never expressly declared the statutes unconstitutional but argues that it implicitly did so.

¶ 5    Despite the framing of the issues on appeal, we think the district attorney presents two questions of law.  The first is whether the trial court erred by instructing the jury that marijuana "does not include industrial hemp."  The second is whether the trial court erred by refusing to instruct the jury that the medical marijuana affirmative defense includes three elements not contained in the Colorado Constitution.

### III.    Standard of Review

¶ 6    We review questions of law de novo.  *See People v. Garcia*, 113 P.3d 775, 780 (Colo. 2005).  Identifying the elements of an affirmative defense is a question of law.  *See id.*

### IV.    The Definition of Marijuana

¶ 7    The first question presented is whether marijuana includes industrial hemp.  This precise question was decided by the supreme court in an interlocutory appeal in this very case.  *People v. Cox*, 2018 CO 88.  There, relying on article XVIII, section 16(2)(f) of the Colorado Constitution, the supreme court stated, "Amendment 64

3

makes clear that the definition of marijuana 'does not include industrial hemp.'" *Cox*, ¶ 1 n.2 (quoting Colo. Const. art. XVIII, § 16(2)(f)). Given the supreme court's determination in this very case, we cannot conclude that the trial court erred by instructing the jury that marijuana does not include industrial hemp.

¶ 8    Both this court and the trial court are bound by supreme court decisions. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 40. Therefore, we approve the trial court's definitional instruction.

## V.    Medical Marijuana Affirmative Defense

¶ 9    The second question requires more analysis. Cox was charged with unlawful cultivation of marijuana under section 18-18-406(3)(a)(I). He asserted the medical marijuana affirmative defense contained in article XVIII, section 14(2)(a)(I)-(III) of the Colorado Constitution and asked the court to instruct the jury on the elements of that affirmative defense.

¶ 10    The Colorado Constitution prescribes the specific elements of the medical marijuana affirmative defense:

> a patient or primary care-giver charged with a violation of the state's criminal laws related to the patient's medical use of marijuana will be deemed to have established an affirmative defense to such allegation where:

4

> (I) The patient was previously diagnosed by a physician as having a debilitating medical condition;
>
> (II) The patient was advised by his or her physician, in the context of a bona fide physician-patient relationship, that the patient might benefit from the medical use of marijuana in connection with a debilitating medical condition; and
>
> (III) The patient and his or her primary care-giver were collectively in possession of amounts of marijuana only as permitted under this section.

Colo. Const. art. XVIII, § 14(2)(a).

¶ 11     Nothing in the constitutional provision creating the affirmative defense expressly authorizes the General Assembly to add additional substantive elements to the defense.

¶ 12     Nevertheless, the General Assembly enacted section 18-18-406(3)(b)(I), which provides that it is not a violation of section 18-18-406(3)(a)(I) if "[t]he person is lawfully cultivating medical marijuana pursuant to the authority granted in section 14 of article XVIII of the state constitution in an *enclosed and locked space.*" (Emphasis added.)

¶ 13 Section 18-18-406(3.5) further provides that a person is subject to the offenses and penalties of subsection (3) *unless* he "is in compliance with the requirements of section 25-1.5-106." Section 25-1.5-106, C.R.S. 2020, provides, in pertinent part, that a primary caregiver "shall maintain a list of his or her patients" and "shall have his or her registry identification card in his or her possession at all times that he or she is in possession of any form of medical marijuana." § 25-1.5-106(8)(a)(II), (9)(a).

¶ 14 Relying on these statutory provisions, the prosecutor requested that the medical marijuana affirmative defense instruction include three additional elements not contained in the constitution. The elements requested were that the defendant must (1) have his caregiver registration card in his possession; (2) maintain a list of his patients; and (3) grow the marijuana plants in an enclosed and locked space. The trial court denied the prosecutor's request and instructed the jury only on the elements set forth in the constitution.

¶ 15 It is well established that the General Assembly has authority to enact statutory procedural prerequisites for the enforcement of rights granted in the Colorado Constitution.

¶ 16    Thus, in the criminal context, the supreme court has held that a statute requiring a defendant to make timely pretrial disclosure of alibi witnesses, or lose the chance to call those witnesses, did not infringe on the defendant's constitutional right to call witnesses in his own defense. *People v. Hampton*, 696 P.2d 765, 774 (Colo. 1985).

¶ 17    And in the civil context, the court has upheld statutes that condition the enforcement of the constitutionally created right of condemnation of land on the satisfaction of a variety of procedural prerequisites. *Glenelk Ass'n v. Lewis*, 260 P.3d 1117, 1121 (Colo. 2011); *see* Colo. Const. art. II, § 14.

¶ 18    But the district attorney has not cited, and we have not found, any case that authorizes the legislature to substantively *dilute* rights expressly granted in the constitution. It is elemental law that the Colorado Constitution establishes the supreme law of the State of Colorado. *In re Senate Bill No. 9*, 26 Colo. 136, 139, 56 P. 173, 174 (1899) (per curiam). Therefore, a statute that purports to add substantive elements to a defense defined in the constitution cannot trump the constitution.

> The constitution is the supreme law of the state, solemnly adopted by the people, which must be observed by all departments of government; and if any of its provisions seemingly impose too great a limitation, they must be remedied by amendment, and cannot be obviated by the enactment of laws in conflict with them.

*Id.*

¶ 19    The addition of substantive elements to an affirmative defense makes it more difficult for a defendant to establish the defense. *See Garcia*, 113 P.3d at 784. Therefore, when, as here, the Colorado Constitution specifically prescribes and defines an affirmative defense and does not authorize the General Assembly to add additional substantive elements, courts must apply the constitution as written.

¶ 20    The Colorado Supreme Court Committee on Model Criminal Jury Instructions carefully considered this precise question with respect to the enclosed and locked space statutory requirement. COLJI-Crim. H:68 cmt. 6 (2020). It concluded that because the "constitutional defense applies regardless of whether the space is enclosed or locked — and because the statute cannot constitutionally narrow the breadth of this defense —" the model

8

instruction would not include this element. *Id.*[2] We are not bound by any determinations by the Committee on Model Criminal Jury Instructions. "[P]attern jury instructions are not law, not authoritative, and not binding . . . ." *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009). Nevertheless, we conclude that the Committee's analysis in this respect is sound.

¶ 21 Because subsections (3)(b)(I) and (3.5) of section 18-18-406 purport to add substantive elements to the constitutionally created and defined affirmative defense, we approve the trial court's instruction on the elements of the defense set forth in the Colorado Constitution.

## VI. Conclusion

¶ 22 We approve the trial court's challenged rulings.[3]

---

[2] Regarding the bookkeeping and card-carrying requirements, the Supreme Court Committee on Model Criminal Jury Instructions expressed no opinion on "whether section 18-18-406(3.5)[, C.R.S. 2020,] validly limits the affirmative defense" set forth in the constitution. COLJI-Crim. H:68 cmt. 7 (2020).

[3] We do not condone the deprecatory and sarcastic statements that the senior deputy district attorney directed at the trial judge in his opening brief. The record is clear that the trial court was unfailingly polite to the deputy district attorney. The court carefully considered all arguments made by the deputy district attorney and, in fact, accepted many of them throughout the course of this

JUDGE DAILEY and JUDGE TOW concur.

---

protracted case. The fact that the court made a ruling (that was entirely consistent with the Colorado Supreme Court pattern jury instructions) that displeased the district attorney is not a warrant to make sarcastic and snide remarks about the judge in this court.